# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID. No. 1201020817A |
| | ) | |
| LAMOTT STEVENSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  May 13, 2024
Date Decided:  June 13, 2024

*Upon Consideration of Defendant's Motion for Postconviction Relief,*
**DENIED**

*Upon Consideration of Defendant's Request for Appointment of Counsel,*
**DENIED AS MOOT**

*Upon Consideration of Defendant's Motion for Discovery,*
**DENIED AS MOOT**

Luke Raber, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Lamott Stevenson, *pro se* Defendant.

**JURDEN, P.J.**

## I.   INTRODUCTION

On November 9, 2012, a jury found Lamott Stevenson ("Stevenson")  guilty of one count Burglary First Degree, two counts Robbery First Degree, one count Assault First Degree, three counts Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), two counts Possession of a Firearm During the Commission of a Felony ("PFDCF"), one count Conspiracy Second Degree, and one count Wearing a Disguise During the Commission of a Felony, arising from a violent home invasion.[1]  Stevenson has now filed a third Motion for Postconviction Relief under Superior Court Criminal Rule 61 ("Motion").[2]  He also filed a Motion for Appointment of Counsel and a Motion for Discovery.[3]  For the reasons set forth below, Stevenson's third Motion for Postconviction Relief is **DENIED,** and Stevenson's Motion for Appointment of Counsel and Motion for Discovery are **DENIED AS MOOT.**

---

[1] D.I. 54.
[2] D.I. 161.
[3] *Id.*, D.I. 162.

## II.    BACKGROUND

On December 15, 2011, Michael Gallagher ("Michael") was sitting in his living room when he heard a commotion in the kitchen.[4]  Upon walking into the kitchen, he was confronted by three individuals wearing ski masks and hoods.[5]  A fight ensued during which Michael was hit over the head with a crowbar and rendered unconscious.[6]  When his wife, Kathleen, (who was in the back of the house watering plants) heard their dogs bark in distress, she went to investigate and saw someone emerge from the kitchen.[7]  One of the masked individuals chased her out onto the back deck where he held her at gunpoint.[8]  Meanwhile, inside, Michael regained consciousness and grabbed a pistol that he kept on top of the refrigerator.[9]  As the other two masked individuals came down the stairs, Michael fired four shots at them.[10]  Michael testified at trial that he thought he must have hit someone because there was no shattered glass from the front door which likely would have indicated that he missed them.[11]  Upon hearing the gunshots, the individual holding Kathleen at gunpoint fled.[12]

---

[4]  D.I. 54, Trial Tr. vol. 2, 10-22.
[5] *Stevenson v. State*, 83 A.3d 738 (TABLE) (Del. 2013).
[6] Trial Tr. vol. 2, 11-12.
[7] *Id*. at 15-21.
[8] *Id*.
[9] Trial Tr. vol. 2, 13.
[10] *Id*. at 13-14.
[11] *Id*.
[12] *Id*. at 15-21.

Michael called 911 and police responded.[13] The police photographed blood throughout the residence and found a crowbar.[14] Police traced the crowbar to an Ace Hardware Store in Elkton, Maryland and, after reviewing surveillance footage and speaking with employees, determined that the purchasers were Stevenson and Johnmika Daniels ("Daniels").[15] Stevenson and Daniels traveled to the Ace Hardware Store in a dark Crown Victoria registered to Bryant Brown ("Brown") and Daniels.[16] After looking into the car registration, police discovered that at the time of the home invasion, Stevenson was listed as living at the same address as Brown and Daniels.[17]

The morning following the home invasion, a patient claiming to be Brown was admitted to Crozer-Chester Hospital for gunshot wounds.[18] Based on video surveillance, police determined that the individual being treated was not Brown, it was actually Stevenson using Brown's name.[19] Video surveillance also captured Daniels—the same woman who was with Stevenson for the Ace Hardware Store purchase—picking up Stevenson from the hospital.[20] That same day, Michael's neighbor alerted him to a blood trail on the sidewalk in front of the Gallagher's

---

[13] *Id.*
[14] *Id.* at 77-78; Trial Tr. vol. 1, 23.
[15] Trial Tr. vol. 1, 7; Trial Tr. vol. 2, 181-83.
[16] Trial Tr. vol. 2, 66.
[17] Trial Tr. vol. 2, 67-68.
[18] Trial Tr. vol. 2, 111-12.
[19] Trial Tr. vol. 2, 109-11.
[20] *Id.*, Trial Tr. vol. 3, 181-83.

residence.[21]   DNA testing established the blood stains were consistent with Stevenson's blood.[22]

### III.   PROCEDURAL HISTORY

On November 9, 2012, a jury found Stevenson guilty on all charges.[23]  After the trial, the State moved to have Stevenson declared a habitual offender.[24]  The Court granted the motion on March 22, 2013.[25]  Stevenson was declared a habitual offender on Robbery First Degree (IN12-02-0737), Robbery First Degree (IN12-02-0738), PFDCF (IN12-02-0739), PFDCF (IN12-02-1978), PDWDCF (IN12-02-0740), PDWDCF (IN12-02-1977), PDWDCF (IN12-02-1980), and Burglary First Degree (IN12-02-0741) and was sentenced that same day to 192 years of unsuspended Level V time due to his habitual offender status.[26]  Stevenson was sentenced as follows: for Robbery First Degree, 25 years at Level V; for Robbery First Degree, 25 years at Level V; for Assault First Degree, 2 years at Level V; for PFDCF, 25 years at Level V; for PFDCF, 25 years at Level V; for PDWDCF, 25 years at Level V; for PDWDCF, 25 years at Level V; for PDWDCF, 25 years at Level V; for Burglary First Degree, 15 years at Level V; for Wearing a Disguise During the Commission of a Felony, 1 year at Level V, suspended for 1 year at Level

---

[21] Trial Tr. vol. 2, 21-22.
[22] *Id*. 87-89.
[23] D.I. 54.
[24] *Id*.
[25] D.I. 67, 69.
[26] *Id*.

III; and for Conspiracy Second Degree, 1 year at Level V, suspended for 1 year at Level III.[27]

On April 17, 2013, Stevenson appealed his conviction to the Delaware Supreme Court.[28] On January 13, 2014, the Supreme Court affirmed the Superior Court's judgment.[29]

On April 2, 2014, Stevenson filed his first *pro se* motion for postconviction relief and appointment of counsel.[30] On April 15, 2014, the Court granted Stevenson's request for counsel.[31] On September 29, 2014, with the help of appointed counsel, Stevenson filed an amended motion for postconviction relief, raising an ineffective assistance of counsel claim.[32] On May 26, 2015, the Court denied the motion.[33] Stevenson appealed, and the Supreme Court affirmed the denial of the Superior Court on February 10, 2016.[34]

Stevenson filed his second motion for postconviction relief on February 17, 2021[35] along with a motion for appointment of counsel.[36] The Court denied

---

[27] D.I. 72.
[28] D.I. 71.
[29] D.I. 90.
[30] D.I. 95, 97.
[31] D.I. 96.
[32] D.I. 114.
[33] D.I. 128.
[34] D.I. 136.
[35] D.I. 144.
[36] D.I. 145.

Stevenson's request for appointment of counsel,[37] and on March 7, 2023, summarily dismissed Stevenson's second postconviction relief motion.[38]

On January 29, 2024, Stevenson filed the instant third Motion for Postconviction Relief and Motion for Appointment of Counsel.[39] On March 7, 2024, Stevenson filed the instant Motion for Discovery.[40] The State submitted a response to his Motion on April 17, 2024[41] which Stevenson replied to on May 13, 2024.[42]

## IV.  STANDARDS OF REVIEW

Rule 61 governs postconviction relief.[43]  Under Rule 61, an incarcerated individual may seek to dismiss his conviction by establishing a lack of jurisdiction, or alternative ground, that sufficiently provides a factual and legal basis for a collateral attack upon the conviction.[44]  While "Rule 61 is intended to correct errors in the trial process, [it does] not allow defendants unlimited opportunities to relitigate their convictions."[45]

Before considering the merits of any postconviction relief claims, the Court must first consider whether any procedural bars exist.[46] Rule 61(i) establishes four

---

[37] D.I. 146.
[38] D.I. 159.
[39] D.I. 161, 162.
[40] D.I. 164.
[41] D.I. 166 ("State's Resp. to Def.'s Mot. for Postconviction Relief").
[42] D.I. 168 ("Def.'s Resp. to State's Resp. to Def.'s Mot. for Postconviction Relief").
[43] Super. Ct. Crim. R. 61(a)(1).
[44] *Id*.
[45] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[46] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

procedural bars to postconviction relief.[47]  Rule 61(i)(1) requires a motion for postconviction relief must be filed within one year of a final judgment or conviction.[48]  Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[49]  Pursuant to Rule 61(i)(3) and (4), any ground for relief not previously raised is deemed waived and any claims formerly adjudicated are thereafter barred.[50]  Stevenson's two other claims regarding his plea agreement have been formally adjudicated or were not raised in his initial appeal.[51]

Rule 61(d)(2) sets forth exceptions to the bar to successive motions[52]:

> a second or subsequent postconviction motion shall be summarily dismissed, unless the movant was convicted after a trial and the motion either: (i) pleads with particularity new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges for which he was convicted; or (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.[53]

Stevenson's only potential path to relief is under Rule 61(d)(2)(i), in which:

---

[47] Super. Ct. Crim. R. 61(i)(1)-(4).
[48] Super. Ct. Crim. R. 61(i)(1).
[49] Super. Ct. Crim. R. 61(i)(2).
[50] This includes proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding.  *See* Super. Ct. Crim. R. 61(i)(5), (d)(2)(i), (ii).
[51] *See* D.I. 90, 128, 136, 146.
[52] Super. Ct. Crim. R. 60(i)(2)(i).
[53] Super. Ct. Crim. R. 60(d)(2)(i)(ii).

[Stevenson] must present additional evidence that was not available at trial and would not have been despite his exercise of due diligence. [He] must also convince us that the new evidence, when considered in the context of all the relevant evidence by a properly instructed jury, is such as will probably change the result if a new trial were granted.[54]

## V. DISCUSSION

A. Motion for Postconviction Relief

To satisfy Rule 61(d)(2)(i), Stevenson must plead with particularity that new evidence exists that creates a strong inference that he is actually innocent in fact of the act underlying the charges for which he was convicted.[55] Innocence of the acts underlying the charges requires "more than innocence of intent; it requires new evidence that a person other than the petitioner committed the crime."[56]

Stevenson's claim of actual innocence rests on an affidavit provided by Stevenson's co-defendant, Kevin Evans ("Evans"). Evans avers in his one-page affidavit:

> I have no knowledge and can say truthfully and clearly that Lamott Stevenson in no way have or had part taken into any crime with me in any case. It is clearly a case of mistaken identity when it comes to him as a co-defendant. In regards to our case together, I can assure and make

---

[54] *Purnell v. State*, 254 A.3d 1053, 1060 (2021).
[55] Super. Ct. Crim. R. 61(d)(i).
[56] *Purnell*, 254 A.3d at 1095 (citing *State v. Taylor*, 2018 WL 3199537, at *7 (Del. Super. June 28, 2018) (internal quotations omitted).

aware that one person I did know and conclude was involved was [Johnmika] Daniels.[57]

According to the Supreme Court, to prevail under Rule 61(d)(2)(i), Stevenson must show Evans' affidavit is both "(1) new and (2) sufficiently persuasive."[58] The Supreme Court in *Purnell* noted that "[s]atisfying the actual innocence test is, by design, a heavy burden, and such meritorious claims are exceedingly rare."[59]

### i. The "newness" prong

The first prong of the actual innocence test requires Stevenson to present evidence that was "not available at trial and would not have been despite [his] exercise of due diligence."[60]

In *Purnell*, the Supreme Court found that the defendant established the newness requirement by showing that his trial counsel failed to defend Purnell by not implicating a co-defendant.[61] The Supreme Court held that while trial counsel could have explored defense strategies that would point to the co-defendant's guilt as opposed to Purnell's, his conflict of interest in representing the co-defendant rendered that strategy impossible.[62] The Supreme Court found that the conflict of

---

[57] Evans was the third person involved in the robbery that took place on December 15, 2011. D.I. 163.

[58] *Purnell*, 254 A.3d at 1095.

[59] *Id*. at 1100.

[60] *Id*. at 1060.

[61] *Id.* at 1105-06.

[62] *Id*.

interest made it unavailable to Purnell at trial, and therefore, the new evidence prong was satisfied.[63]

Here, Evans' testimony could not have been presented at Stevenson's trial because Evans, Stevenson's co-defendant, was indicted for the same crimes as Stevenson but had not yet taken a plea or gone to trial.[64] It was impossible for Evans—at the time of Stevenson's trial—to testify that Stevenson was not a part of the crime without implicating himself.[65] Given this, the Court finds, and the State concedes, that Stevenson has satisfied the first prong in the "actual innocence" test.[66]

### ii. The "persuasiveness" prong

The second prong of the actual innocence test requires Stevenson to convince the Court that the new evidence—when considered in the context of the evidence submitted to the jury—is of such caliber that it would probably change the result of a new trial if granted.[67] In reaching this determination, the Court "must assess *all* of the evidence, including that which was properly excluded and wrongfully admitted."[68]

---

[63] *Id.*
[64] Criminal Docket of Kevin A. Evans, ID No. 1205025088, D.I. 14.
[65] *Id.*
[66] D.I. 166.
[67] *Bass v. State*, 299 A.3d. 336, 362-61 (Del. 2023).
[68] *Purnell*, 254 A.3d at 1113.

Stevenson has presented an affidavit from Evans in which Evans avers Stevenson is innocent and Daniels was the third perpetrator in the crime.[69] When considered in the context of the evidence submitted to the jury, Evans' averments are not of such caliber that they would probably change the result in a new trial. For instance, Evans' affidavit does not discredit the evidence admitted at trial establishing that Stevenson purchased the crowbar found at the scene, presented to the hospital with gunshot wounds the morning after the home invasion, and used Brown's identity when seeking treatment. Nor does it discredit the video surveillance showing Stevenson being picked up from the hospital by Daniels following his treatment for the gunshot wounds.[70] Nothing in Evans' affidavit discredits the DNA test results showing Stevenson's DNA matched the blood trail found outside of the Gallagher's home or Michael's testimony that he thought he had shot someone based on the fact the glass on the front door was not shattered. Evan's conclusory affidavit does not—and cannot—explain away all the evidence against Stevenson. The "caliber" of Evans' affidavit, when considered in the context of all the evidence admitted at trial, does not come close to convincing the Court that a new jury would decide the case differently.

---

[69] D.I. 163.

[70] Stevenson argues in his response to the State's response that the medical records from the hospital say that the person being treated had six gunshot wounds and that would lead a jury to find Stevenson innocent is incorrect. The jury was able to view the video surveillance and identify Stevenson in the courtroom, additionally, it does not explain why Stevenson's blood was found outside the residence, nor why he bought a crowbar and sledgehammer. *See* D.I. 167.

Stevenson fails to meet his high burden on the persuasiveness prong and his Motion is therefore procedurally barred under Rule 61(i)(2).

For the foregoing reasons, Stevenson's third Postconviction Relief Motion is **DENIED.**

B. <u>Motion for Appointment of Counsel</u>

Because Stevenson's Third Motion for Postconviction Relief is procedurally barred, his Motion for Appointment of Counsel is **DENIED AS MOOT.**

C. <u>Motion for Discovery</u>

Stevenson argues in his *pro se* Motion for Discovery that he has not been in possession of his legal file since 2017.[71] He submits that having access to a copy of his file again would allow him to bolster his third Postconviction Relief Motion and asks the Court to stay this matter until he has a chance to go through his file.[72] Stevenson is unable to overcome the procedural bar that would entitle him to a merits review of his motion for postconviction relief. As such, his Motion for Discovery and request to stay are **DENIED AS MOOT**.

## VI.   CONCLUSION

Stevenson's only path to postconviction relief is through the Rule 61(d)(2)(i)

---

[71] D.I. 164.
[72] *Id.*

"new evidence" exception, but he has failed to satisfy the persuasiveness prong. Consequently, his third Motion for Postconviction Relief is procedurally barred and therefore **DENIED**, and his Motion for Appointment of Counsel and Motion for Discovery are **DENIED AS MOOT.**

/s/ Jan R. Jurden

Jan R. Jurden, President Judge

Original to Prothonotary